UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

TOTAL FIBER RECOVERY @ CHESAPEAKE, LLC,
an Oregon limited liability company,

    Plaintiff,

v.                                                                   Civil Action No.: 2:24cv465

LEXDEN CHESAPEAKE I, LLC, a
Virginia limited liability company,

    Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

    Defendant's Motion for Sanctions not only willfully ignores multiple local rules, but it also misstates the history underlying the case. Defendant was aware of the inoperable fire suppression system at least as early as August 2023, but it never requested that Plaintiff allow Defendant to inspect the system or to preserve the evidence of the system or made any attempt to contest the inoperability of the system. At the time that Plaintiff disposed of the prior system, the only dispute between the parties was who would pay for the replacement system, not whether it needed to be replaced. Defendant now seeks to use its own failures to investigate this matter in an attempt to win this case on a specious "hail mary" argument. As outlined in more detail below, the history of this case and the parties' actions are not of the sort that the spoilation doctrine was intended to address. The parties are approximately one month from trial, and Defendant should not be permitted at this late juncture to avoid a trial on the merits.

1

## BACKGROUND

**I.      Facts Underlying the Lawsuit.**

The background provided by the Defendant in its Motion is misleading in multiple respects.  As is outlined in the Complaint, Plaintiff Total Fiber Recovery @ Chesapeake, LLC ("Plaintiff" or "TFRC") leased an industrial property in the City of Chesapeake, Virginia from Defendant Lexden Chesapeake I, LLC ("Defendant" or "Lexden") under a commercial lease dated October 23, 2019 (the "Lease") and an Assignment and Assumption of the Lease Agreement dated June 1, 2022 (the "Assignment").  (Dkt. No. 1, ¶ 4; Dkt. No. 7, ¶ 4.)  Based upon the pleadings and the discovery exchanged, it appears undisputed that the language of the Lease controls this case.  A copy of the Lease is attached to the Complaint as Exhibit A. (Dkt. No. 1-1.)

Pursuant to Section 14 of the Lease, Lexden was required to deliver the Property in compliance with all "applicable laws, ordinances, rules, regulations and requirements (including zoning) of any applicable federal, state, municipal and county governments as of the Effective Date."  (Dkt. No. 1-1, § 14.)  On its face, this provision required the premises to be delivered to Plaintiff in compliance with the fire code.  (*Id.*; *see also* **Exhibit A**, Dep. Tr. Gregory Marshall, at 22:23 – 25; 23:1–2.)  As outlined in the Complaint, the City of Chesapeake adopted the 2018 Virginia Statewide Fire Protection Code ("SFPC") (Code of Virginia, Title 27) into its Code of Ordinances, which requires that the owner of a building maintain fire suppression equipment and systems in an operative condition at all times.  (*See* Dkt. No. 1, ¶¶ 8–11.)

In violation of the aforementioned requirement, Lexden delivered the Property with an inoperable fire suppression system.  The fact that the system was inoperable is supported by the evidence exchanged in discovery, including, but not limited to, the following:

- Lexden's corporate designees Gregory Marshall and Douglas Fuller[1] confirmed during their depositions that Lexden never conducted an inspection of the fire suppression system before turning the Property over to Plaintiff. (*See* **Exhibit A**, Dep. Tr. Gregory Marshall, at 17:7–25; 18:1–16; **Exhibit B**, Dep. Tr. Douglas Fuller, at 11:3–18, 13:9–12.[2])

- Glenn MacKenzie, the Project Estimator and Fire Sprinkler Project Manager of the company that tested and replaced the fire suppression system, BFPE International ("BFPE"), provided first-hand knowledge that the system was deteriorated, leaking, and falling apart. (**Exhibit C**, Affidavit.) Mr. MacKenzie specifically recounted "repetitive attempts to introduce water into the systems only to have pipe/fittings separations due to corroded rolled grooves corroding the pipe casing wall tearing." (*Id.* ¶ 8.) Mr. MacKenzie and his team then "shut down the system, repaired the problem areas, and recharged with water only to have new locations separate." (*Id.*) They continued this cycle repeatedly over the course of days "until it was clear that the systems could not be salvaged." (*Id.*) Mr. MacKenzie estimates that 20-30 locations on the fire suppression systems fell apart during his team's 5-7 days on site. (*Id.* ¶ 11.) They expected that the cycle would continue with more locations failing even if they continued repairing problem areas and introducing water. (*Id.*)

---

[1] Gregory Marshall and Douglas Fuller are the only two managers of the Property. (**Exhibit A**, 9:24–25; 10:1–13.)
[2] Defense counsel indicated a desire to have Mr. Marshall and Mr. Fuller read and sign their deposition transcripts. This has not occurred as of the date of this filing.

3

- Defendant's retained expert, Peter Striffler, testified in his deposition that he considers the employees of BFPE to be qualified fire suppression engineers and that he would believe what the BFPE engineers on scene reported. (**Exhibit R**, Dep. Tr. Striffler, at 37:7–14; 39:23–25; 40:1–21[3].)

- Daniel Joyce, TFRC's licensed fire suppression engineer expert, opines that the original fire sprinkler systems were shut off in 2017, not maintained, fell in a state of disrepair, and required removal and replacement prior to Plaintiff leasing the property. (**Exhibit D**, Joyce Report, at 11.)

- Photographs demonstrate the condition of the inoperable system and the significant water on the walls and ground of the facility on the Property after the fire suppression system was tested. (*See e.g.*, **Exhibit E**, select photographs[4].)

Notably, Mr. Fuller's job duties as manager include being the contact person between Lexden and TFRC and conducting any on-site activities. (**Exhibit A**, at 10:4–17, 30:5–18.) Mr. Fuller admitted during his deposition that he was notified that the fire suppression system was inoperable in August 2023. (**Exhibit B**, at 16:7–11, 17:9–25.) He further admitted that his immediate response to Plaintiff was that Lexden would not be responsible for the cost of the fire suppression system, leaving TFRC no option but to remove and replace the system. (*Id.* at 17:23–25, 18:1–25, 19:1–18; *see also* **Exhibit A**, at 46:17–25, 47: 1–11, 48: 4–7.) Lexden did

---

[3] Counsel for Defendant may still intend to have Mr. Striffler read and sign his deposition transcript, which has not yet occurred because the deposition was just taken on February 18, 2025.

[4] Numerous photographs and videos have been produced in discovery. A sampling of those photographs is produced herewith. Should the Court desire to see the remainder of the photographs and videos, Plaintiff can file the documents.

4

not take the position that the system was operable at that time, nor did it ask to inspect the system or request that the system be retained.

Importantly, Mr. Fuller worked full-time in a building adjacent to the Property until August 2024.  (*See* **Exhibit B**, at 5:22–25, 6:1–7, 10:5–9.)  Mr. Fuller shared office space with representatives of TFRC while the build out of the facility was taking place on the Property.  (*See id.* at 10:11–15.)  It was during this time period that the fire suppression system was being tested and its repair attempted by BFPE.  Mr. Fuller spoke with representatives of TFRC on a near daily basis and was kept apprised of the status of the Property during the relevant time period. Again, at no time during those countless interactions and conversations did Mr. Fuller request to inspect the fire suppression system, ask that the system be retained, or take the position that the fire suppression system was operable.

In addition to Mr. Fuller being fully aware of the issues with the fire suppression system and the progress of the Project, TFRC also provided Lexden with written notice on December 6, 2023[5] and April 24, 2024 of the inoperable nature of the system such that it had to be replaced.  (*See* Dkt. Nos. 1-2, 1-3.)  Lexden finally provided an e-mail in response on May 7, 2024.  (**Exhibit F**, E-mail.)  Although this e-mail contends that it was Lexden's "firm belief that the system was in fact operable" at the time that TFRC took possession of the Property, Mr. Marshall admitted during his deposition that when he took the position in the e-mail that the system was operable, he meant that the components of the system were physically present, not that the system was functioning.  (*See* **Exhibit A**, at 52:5–12, 52:19–25, 53:25, 54:1–7, 57:1–17.)

---

[5] Contrary to Defendant's assertion, the content of the letter was not misleading in stating that the system would need to be replaced.  (Dkt. No. 16, ¶ 8.)  At the time of the letter, a new system had not been installed.

5

Plaintiff responded to Mr. Marshall's letter on June 6, 2024. (**Exhibit G**, Letter from Herbert to Marshall.)

In addition to the numerous interactions discussed above that gave Lexden information and notice of the issues and their status, Mr. Marshall testified that he toured the facility in July or August 2024 following receipt of the bill for replacing the system. (**Exhibit A**, at 37: 15–25, 38:1–25, 39:1–23, 49:9–25, 50:1–18.) Mr. Marshall explained that he made this visit because he was concerned about the "expansion" of the system, not whether the original system was operable. (*See id.*) Specifically, Mr. Marshall testified that he and Robert Kinser[6] knocked on the door of the trailer on the Property and asked TFRC's General Manager, Joe Myers, to show them around the Property. (*Id.* at 50:18 – 25.) Mr. Marshall noted that Mr. Fuller had done that very same thing before, further demonstrating Mr. Fuller's nearly unfettered access to the Property at any time. (*Id.*) Mr. Marshall explained viewing the new fire suppression system that had been installed, which he described as an "impressive fire suppression system." (*Id.* at 39:5–6.) Again, at no point during this site visit with counsel, Mr. Kinser, present or during any of Mr. Fuller's prior site visits, did anyone from Lexden request to inspect the original fire suppression system, ask about the system's whereabouts, or ask that the system be retained. Further, during these site inspections, it was obvious that the original system had been removed and the new system installed, rendering Lexden's representation in its motion that it "did not know Total Fiber had both demolished the System and substantially removed its component parts from the

---

[6] Robert Kinser is an attorney at the firm that represents Lexden. Upon information and belief, Mr. Kinser has a membership interest in Lexden outside of his firm's representation of Lexden.

Property until a January 10, 2025 site visit" disingenuous and demonstrably false. (*See* Dkt. No. 16, ¶ 11.)[7]

## II. Procedural History During the Pendency of the Litigation.

Plaintiff filed the subject Complaint on July 26, 2024. (Dkt. No. 1.) Defendant filed an Answer to the Complaint on September 4, 2024, raising several affirmative defenses relating to whether Defendant was responsible for paying for the new fire suppression system. (Dkt. No. 7.)

The Court issued a Rule 26(f) Pretrial Order on September 24, 2024, permitting discovery to commence so long as no responses were due before November 5, 2024. (Dkt. No. 10.) Defendant issued its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission on September 12, 2024, which included a total of four Requests for Production. (**Exhibit H**, at 7–8.) None of the Requests for Production asked to inspect the previous fire suppression system.

Plaintiff takes significant issue with Defendant's false assertion that Plaintiff's "discovery conduct reveals an intent to hide facts related to its removal of the System." (See Dkt. No. 16, ¶ 32.) Plaintiff provided responses to the aforementioned Requests for Production on November 5, 2024, in compliance with the Court's 26(f) Pretrial Order. In direct contradiction to Defendant's allegations, Plaintiff's response to Defendant's non-specific requests included the production of documents from the company that completed the removal and disposal of the old fire suppression system, Industrial Turnaround Corporation ("ITAC"). (*See e.g.*, **Exhibit I**, documents produced in discovery at nos. TFR 001221–1224, TFR 000167–000168.) On December 20, 2024, Plaintiff supplemented its responses with additional ITAC documents that it subsequently located. (*See*

---

[7] Lexden also argues that Plaintiff did not have the right or authority to remove and replace the system. (Dkt. No. 16, ¶¶ 10–12, 29–30.) Not only does this argument lack merit, but it is also not a spoliation argument. Rather, if anything, this argument goes to the merits of the case, i.e. whether Lexden is responsible for replacing the system.

7

*e.g.*, **Exhibit J**, documents produced in discovery at nos. TFR 012343–012346, 012347–012350, 012327–012331, 012960–012961.) On January 24, 2025, Defendant issued a 30(b)(6) Notice for the Deposition of ITAC, which identified removal of the fire suppression system as a topic. (*See* **Exhibit K**, Defendant's Notice of Deposition of ITAC.) This background demonstrates Plaintiff's repeated disclosure of the fact that the old fire suppression system had been removed and Defendant's knowledge of that fact. This is in addition to the knowledge of Defendant's representatives who admit to being on-site on multiple occasions and seeing that a new fire suppression system had been installed. (*See e.g.*, **Exhibit A**, at 37–39.) Accordingly, Defendant's representation that Plaintiff has demonstrated "bad faith" in its discovery conduct revealing an "intent to hide facts related to its removal of the system" is disingenuous and false.

Counsel for Lexden sent an e-mail on December 20, 2024, requesting a site visit for the first time during the discovery period in this case. (*See* **Exhibit L**, E-mail String.) At that time, counsel indicated that in addition to reviewing Plaintiff's document production, the Defendant's expert wanted to conduct a site visit. (*Id.*) The e-mail made no mention of inspecting the old fire suppression system. (*See id.*) On December 23, 2024, defense counsel issued a Request for Inspection, which listed the following: (1) the premises at 1447 Precon Drive/ the Facility, (2) the replacement fire suppression system, (3) "Any portion of the Existing Fire Suppression System, as defined, still extant."[8] (*See* **Exhibit M**, Requests to Inspect Property.)

The site visit was conducted on January 10, 2025. During the site visit, counsel for the parties and their experts inspected all of the above, including the remaining piping from the inoperable fire suppression system. (*See* **Exhibit N**, Photographs from Site Inspection.)

---

[8] This Request is yet another example of the Defendant's knowledge that the system had been replaced with a new system and that portions of the system were no longer existent.

It appears that during or shortly after that site visit, counsel for Defendant had the idea that a spoliation motion could serve as the silver bullet for their case. On the last business day that the Defendant could issue written discovery requests to Plaintiff, the Defendant issued a set of discovery requests to Plaintiff, asking for the first time for specific information regarding the prior system. (*See* **Exhibit O**, Defendant's Third Interrogatories, Third Requests for Production, and Second request for Admission; *see also* **Exhibit H and P**, Defendant's First and Second Discovery Requests to Plaintiff.)

Contrary to Defendant's assertion that that Plaintiff "reluctantly admitted" that the system had been demolished and removed, Plaintiff provided timely responses to the Requests relating to the demolition and location of the system, without objection and in accordance with the time provided in the Federal Rules of Civil Procedure. (**Exhibit Q**, Plaintiff's Responses, at 5–7.)

It has never been a secret that Plaintiff had the fire suppression tested, that it was deemed inoperable, and that Plaintiff was forced to have it replaced because Defendant refused. From August 2023 to January 2025, Defendant made no attempt to inspect the inoperable system, made no meaningful contention that the system was functional at the time the Property was turned over to Plaintiff, and never asked that Plaintiff retain the previous fire suppression system for later inspection. At the time that Plaintiff disposed of the prior system, the only dispute between the parties was who would pay for the replacement system, not whether it needed to be replaced. As outlined below, this timeline does not support spoliation sanctions, nor would any of the purposes of spoliation sanctions be served by imposing a sanction in this case.

# LEGAL STANDARD

I. **The Court's authority and purpose when deciding whether to impose spoliation sanctions.**

"Spoliation is 'the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3 583, 590 (4th Cir. 2001)). "A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its 'inherent power . . . to redress conduct "which abuses the judicial process."'" *Id.* (quoting Silvestri, 271 F.3d at 590; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). Rule 37(e) applies to electronically stored information and is thus inapplicable to the subject of this motion. *See* Fed. R. Civ. P. 37(e); *see also Steves and Sons*, 327 F.R.D. at 103–04.

"Courts have broad discretion when deciding whether to impose spoliation sanctions." *Steve and Sons*, 327 F.R.D. at 103. "However, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Id.* (quoting *Silvestri*, 271 F.3d at 590 (internal quotations omitted)). Appropriate purposes of a spoliation sanction include the following: "(1) deter[ring] parties from engaging in spoliation; (2) plac[ing] the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restor[ing] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (quoting *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal quotations omitted)).

## II. The burden of proof on and elements that must be proven by the party moving for spoliation sanctions.

For a court to impose a sanction pursuant to its inherent power, the movant must show the following:

> (1) [t]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) [t]he destruction or loss was accompanied by a culpable state of mind; and (3) [t]he evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought discovery.

*Id.* at 104 (internal quotations omitted) (quoting *Federico v. Lincoln Military Hous.*, LLC, No. 2:12-CV-80, 2014 WL 7447937, at *6 (E.D. Va. Dec. 31, 2014); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)). Courts in the Fourth Circuit apply a clear and convincing standard to motions for spoliation sanctions, "especially where a relative harsh sanction like adverse inference is sought." *Id.*

"This analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve and breached that duty by failing to take reasonable steps to preserve." *Id.* Although bad faith need not be shown, "[s]poliation must involve more than the "'negligent loss or destruction of evidence,'" as 'the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." *Id.* (quoting *Turner v. United States*; 736 F.3d 274, 282 (4th Cir. 2013); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

## ARGUMENT

### I. Defendant's Motion is not timely.

"[S]poliation sanctions may be denied where the complaining party fails to raise the issue of spoliation sanctions in a reasonable amount of time." *Scalia v. County of Kern*, 576 F. Supp. 3d 703, 706 n.1 (E.D. Ca. 2021); *see also Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d

11

494, 508 (D. Md. 2009) ("The lesson to be learned from the cases that have sought to define when a spoliation motion should be filed in order to be timely is that there is a particular need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion."); *Crown Battery Manufacturing Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 996 (N.D. Ohio 2016) (explaining the import of a court conducting timeliness inquiries when deciding spoliation motions, including the "great potential to disrupt the pretrial schedule and delay the start of trial" when raised "late in the game."). "For example, sanctions have been denied on timeliness grounds where petitioners waited 9-12 months between learning of the potential spoliation of evidence and the seeking of imposition of appropriate sanctions." *Scalia*, 576 F. Supp. 3d at 706 n.1.

The timeline outlined above reflects that Defendant knew that the system was replaced as the work was occurring. For example, Defendant knew that the old system had been removed and the new system installed as of July or August 2024 when Mr. Marshall toured the facility to see the new system. (*See* **Exhibit A**, at 37: 15–25, 38:1–25, 39:1–23, 49:9–25, 50:1–18.) For nearly half a year after that tour, Lexden did nothing to pursue any issue related to the removal of the system or any potential spoliation. Lexden has waited until the last possible minute to pursue its spoliation argument. Such tactics are not timely. The Motion for Sanctions should be denied.

II.     **Defendant cannot meet its burden to show that Plaintiff had an obligation to preserve the inoperable fire suppression system.**

"Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." *Steve and Sons*, 327 F.R.D. at 106 (quoting *Turner*, 736 F.3d at 282). "However, that duty 'arises "not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."'" *Id.* (quoting *Turner*, 736 F.3d at 282; *Silvestri*, 271 F.3d at 591). "The mere existence of a dispute does not

necessarily mean that parties should reasonably anticipate litigation or that a duty to preserve arises." *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009). "Instead, the duty seems to begin 'somewhere between knowledge of the dispute and direct, specific threats of litigation.'" *Steve and Sons*, 327 F.R.D. at 106 (quoting *Huggins v. Prince George's Cty.*, 750 F. Supp. 2d 549, 560 (D. Md. 2010)). "[T]he specific occurrences that should notify a party of future litigation are 'highly case specific and fact dependent." *Id.* (quoting *in re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D.W. Va. 2014)). The timeline of this case demonstrates that Plaintiff did not have a duty to preserve the entire original fire suppression system at any time prior to or at the time that the system was demolished and disposed of. As outlined in detail in the Background Section above, Plaintiff notified Lexden of the inoperable fire suppression system at least as early as August 2023, while the initial testing of the system was underway and when the inoperability of the system became known. Lexden's response was not that they contested that the system was inoperable, but instead only that Lexden would not be responsible for paying for the new system. Lexden did not inspect the system or request that the system be retained despite the lengthy period of time that it had to do so. *See Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) (quoting *Hirsch v. General Motors Corp.*, 226 N.J. Super. 222, 251 (1993)) ("The scope of the duty to preserve evidence is not boundless. At a minimum . . . an opportunity for inspection should be afforded a potentially responsible party before relevant evidence is destroyed."); *see also Reynolds v. Crown Equipment Corp.*, No. 5:07CV00018, 2008 WL 2465032, at *8 (W.D. Va. June 16, 2008) (noting that the movant received notice of the subject accident and were provided with access to the instrumentality involved in the accident shortly after the accident in denying a spoliation claim).

13

Plaintiff hired ITAC to dismantle the system so that it could be replaced. The demolition occurred during October and November of 2023, months after Lexden was aware that the system had to be replaced. At the time that the system was demolished, Plaintiff knew that Lexden disputed *who would pay* for the replacement system, but there had been no dispute regarding *whether the system was functioning*. Indeed, it is likely that Lexden did not contest the representation that the system was inoperable because no one from Lexden ever tested or maintained the system from the date that Lexden purchased the Property in 2016 to the date that the Property was turned over to Plaintiff in 2022. The evidence reflects that the system was in a state of complete disrepair.

Given that there was no anticipated dispute regarding the *operability* fire suppression system prior to its demolition and disposal, Plaintiff's duty to preserve was not triggered. *See Steve and Sons*, 327 F.R.D. at 104 (quoting *Turner v. United States*; 736 F.3d 274, 282 (4th Cir. 2013); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)) ("[T]he alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction.") The Spoliation Motion for Sanctions should therefore be denied, and this matter tried on the merits of the actual dispute - whether Lexden is responsible for the costs of replacing the fire suppression system under the terms of the Lease.

### III.     Defendant has not met its burden to prove that dismissal is an appropriate sanction.

"To balance due process rights of litigants and the integrity of the judicial process, the Court must consider the following factors before imposing [severe sanctions]: (1) 'whether the noncomplying party acted in bad faith' (2) 'the amount of prejudice his noncompliance caused his adversary' (3) 'the need for deterrence of this particular sort of noncompliance' and (4) 'the

effectiveness of a less drastic sanction.'" *Baker v. Curtis W. Key Plumbing Contractors, Inc.*, 2016 WL 11672046, at *3 (E.D. Va. Dec. 8, 2016) (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richard & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989)). Before dismissing a case pursuant to a spoliation motion, the court must consider the following factors:

> (1) The degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Baker*, 2016 WL 11672046, at *6 (quoting *Projects Management v. Dyncorp Int'l LLC*, 734 F.3d 366 (4th Cir. 2013)).

> [T]o justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused to be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001).

The aforementioned factors do not support a dismissal of this case. As outlined above, Plaintiff contests that allowing the demolition company to dispose of the original fire suppression system in the ordinary course was inappropriate. Additionally, the disposal was completed by the demolition company at a time when Lexden had known for months that the fire suppression system had to be completely replaced, had nearly unfettered access to the facility, had not disputed the operability of the system, had not asked that the system be retained, and had not asked to inspect the system. *See Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) (quoting *Hirsch v. General Motors Corp.*, 226 N.J. Super. 222, 251 (1993)); *see also Reynolds v. Crown Equipment Corp.*, No. 5:07CV00018, 2008 WL 2465032, at *8 (W.D. Va.

June 16, 2008). As outlined in detail in the Background Section, Lexden's attempts to insinuate to this Court that it did not know that the system was going to be demolished and was demolished is not supported by the facts underlying this case. TFRC's degree of culpability is low.

There is also very little prejudice to Lexden, if any. In addition to Lexden having every opportunity to inspect the system from the time it purchased the Property, to the time it was notified of the inoperability of the system in August 2023, to the time that the system was demolished in October and November of 2023, Lexden has not demonstrated a good faith belief that had the system been inspected, it would have been operable. In fact, all of the evidence in this case, including eyewitness testimony, as outlined in the Background Section above, leads to the undisputed determination that the system was in a state of disrepair and not functional. *See Nichols v. Steelcase, Inc.*, No. Civ. A. 2:04-0434, 2005 WL 1862422, at *10 (S.D. W. Va. Aug. 4, 2005) (declining to impose sanctions when there were eyewitnesses to the incident). Indeed, Plaintiff's expert witness, with years of experience with fire suppression systems, was able to determine from that evidence that the system would not have been operable. Lexden should have retained an expert to look at the same evidence to determine whether he could make a conclusion regarding the operability of the system. In fact, when asked about operability of the old fire suppression system, Defendant's expert agreed that he would rely upon the BFPE employee that was on scene regarding the attempts to test the system. (**Exhibit R**, at 39:23–25; 40:1–21.) For these same reasons, there is little to no prejudice to the administration of justice in this case, and the public interest weighs in favor of a trial on the merits.

TFRC should not be sanctioned in this case, with dismissal or otherwise. It took actions in good faith, in accordance with the only dispute that it reasonably believed existed between the

16

parties (i.e. who would pay for the system, not whether the system needed to be replaced), and with ample notice to Lexden. Lexden seeks to claim prejudice based upon its own lack of timely efforts in determining whether it needed or wanted to inspect the system. Lexden should not benefit from its own dilatory efforts. TFRC therefore respectfully requests that this Motion for Sanctions be denied, and this matter be permitted to proceed to a trial on the merits.

### IV. Request for Attorneys' Fees Incurred in Responding to this Motion

Local Rule 37(E) requires that counsel "confer to decrease, in every way possible the filing of unnecessary discovery motions." E.D. Va. Local Rule 37(E). The Rule prohibits a motion from being filed until counsel has conferred. *Id.* The Rule further requires that a discovery motion contain "a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue." *Id.* Rule 37(H) states as follows:

> Should any party or attorney fail to comply with any of the provisions of this Local Rule 37 or otherwise fail or refuse to meet and confer in good faith in an effort to narrow the areas of disagreement concerning discovery, sanctions provided by Fed. R. Civ. P. 37 may be imposed.

*Id.* R. 37(H). In general, federal courts appear to construe spoliation motions as discovery motions. *See e.g., Thompson v. Dolan*, No. 2:12cv209, 2015 WL 13692124, at *1 (E.D. Va. June 18, 2015) ("Plaintiff subsequently filed various discovery motions, including a motion for spoliation and a motion for sanctions."); *Francis v. Woody*, No. 3:09cv235, 2011 WL 2693206, at *8 (E.D. Va. July 11, 2011) ("It is not recognized as an independent tort in the Fourth Circuit, but is rather a 'rule of evidence' that may lead a court to sanction the spoliator for a discovery violation pursuant to its inherent power . . . .").

Although Defendant issued discovery requests to determine whether Plaintiff knew where the pieces of the inoperable fire suppression system are located, Defendant did not confer about the content of its motion or the alleged spoliation. If Defendant had conferred, the parties should

17

have been able to rectify the numerous misrepresentations contained in Defendant's motion thereby narrowing the scope of the issues. Pursuant to Rule 37(H), the Court should sanction Defendant for filings its discovery motion without conferring and order that Defendant compensate Plaintiff its attorneys' fees in responding to this Motion.

## CONCLUSION

Wherefore, for the reasons stated above, and to be stated in any hearing on this matter, Plaintiff respectfully requests that this Court deny Defendant's Motion for Sanctions, grant Plaintiff its fees in defending this motion, and for such other relief as the Court deems just and appropriate.

Dated: February 21, 2025

                            TOTAL FIBER RECOVERY
                            @ CHESAPEAKE, LLC

                            /s/ Richard H. Ottinger
                                Of Counsel

Richard H. Ottinger (VSB # 38842)
Katherine Lennon Ellis (VSB # 92358)
Woods Rogers Vandeventer Black LLP
101 W. Main Street, Suite 500
Norfolk, VA 23510
Telephone:    757-446-8600
Facsimile: 757-446-8670
Richard.Ottinger@woodsrogers.com
Kate.Lennon@woodsrogers.com
*Counsel for Total Fiber Recovery @ Chesapeake, LLC*